UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL WAYNE ADAMS,    :

    Plaintiff,     : CIVIL NO. 3:11-CV-1711

           :

   v.       : (Judge Kosik)

           :

THOMAS R. KANE[1], et al.,   :

           :

    Defendants     :

**FILED
SCRANTON**

AUG 1 7 2012

PER _M 8 0_
DEPUTY CLERK

## MEMORANDUM

Plaintiff Darrell Wayne Adams ("Adams"), a federal inmate presently confined at the United States Penitentiary Beaumont ("USP Beaumont") in Beaumont, Texas, initiated the above action pro se by filing a Bivens[2]-styled Complaint. (Doc. 1.) Adams seeks injunctive and monetary relief based upon his claim that Defendants provided inadequate medical care following surgery to repair an injury to his right Achilles tendon that he sustained while playing basketball at the United States Penitentiary Allenwood ("USP Allenwood") in White Deer, Pennsylvania. (Id.) Named as Defendants are the Federal Bureau of Prisons ("BOP"); Thomas R. Kane,

---

[1]The Complaint identifies "Thomas R. Cain" as a Defendant; however, in the instant motion, it is indicated that the correct spelling of this Defendant's name is "Thomas R. Kane." (See Doc. 42 at 1.)

[2]Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens actions are the federal counterpart to § 1983 claims brought against state officials. Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (citing Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir. 2001)).

the Acting Director of the BOP at the time this lawsuit was filed; Ricardo Martinez,

former Warden of USP Allenwood; J.L. Norwood, Regional Director of the BOP; and

James Potope, the Assistant Health Services Administrator ("AHSA") at USP

Allenwood.

Presently before the Court is a motion to dismiss, or in the alternative, motion

for summary judgment filed on behalf of Defendants. (Doc. 27.) For the reasons set

forth below, the motion for summary judgment will be granted based upon plaintiff's

failure to exhaust his administrative remedies.

I.      **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that "[t]he Court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). A fact is material if proof of its existence or nonexistence might affect the

outcome of the suit under the applicable substantive law. Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish

that it is entitled to judgment as a matter of law. Where, however, there is a disputed

issue of material fact, summary judgment is appropriate only if the factual dispute is

not a genuine one. Id. An issue of material fact is genuine if "a reasonable jury could

2

return a verdict for the nonmoving party." Id.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. Anderson, 477 U.S. at 256-57. The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985). Rather, a party

3

asserting that a fact is genuinely disputed must support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Thus, summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

## II.   Undisputed Facts

Middle District of Pennsylvania Local Rule ("L.R.") 56.1 provides, in relevant part, as follows: "The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the [moving party's] statement, as to which it is

4

contended there is a genuine issue to be tried . . . All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." L.R. 56.1 also provides that, "Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements."

Adams requested two (2) extensions of time to file his opposition to the instant motion, and in our March 13, 2012 and April 17, 2012 orders granting those extensions, Adams specifically was directed to file his opposition in accordance with the requirements of L.R. 7.6 and L.R. 56.1. (See Docs. 34, 38.) The Orders also advised Adams that these requirements are contained in our standing practice order issued to him on September 14, 2011 (Doc. 4), and that a copy of the relevant rules are attached to that order. (See id.) Our March 13 and April 17 orders also warned Adams that his failure to file his opposition as directed would result in Defendant's motion being deemed unopposed and addressed on the merits. (Id.) While Adams filed a statement of material facts (Doc. 40), it is not responsive to Defendant's statement. As such, the facts set forth in Defendant's statement will be deemed

admitted.[3]

Defendants' statement (Doc. 30) and supporting exhibits[4] (Docs. 29-4 through

29-6) establish the following undisputed facts relevant to the disposition of the instant

motion:

In his complaint, Adams alleges that, on November 17, 2009, he ruptured his

right Achilles tendon while playing basketball at USP Allenwood and that he has not

received appropriate medical care following surgery on November 24, 2009 to repair

the tendon. (Doc. 1 at 3-11; Doc. 29-4, Decl. of FCC Allenwood Senior Attorney J.

Michael Sullivan, at 3 ¶ 3.) The BOP has an administrative remedy procedure with

respect to inmate complaints, namely 28 C.F.R. § 542.10, et seq. (Doc. 30, Defs.'

Statement of Material Facts ("SMF") ¶ 2.) "The purpose of the Administrative

---

[3]While the facts in Defendant's statement will be deemed admitted, we are mindful of our obligation to construe pro se filings liberally, see Liggon-Redding v. Estate of Robert Sugarman, 659 F.3d 258, 265 (3d Cir. 2011), and to that end, in disposing of the instant motion, we will consider exhibits submitted by Adams in opposition to the instant motion relating to the issue of exhaustion, including copies of portions of his administrative remedy records already submitted by Defendants (Doc. 41 at 1-72), and a copy of two certified mail receipts (Doc. 41-1, Attach. 4, at 4).

[4]In support of the instant motion, Defendants have submitted the declarations of J. Michael Sullivan, FCC Allenwood Senior Attorney (Doc. 29-4 at 3-12) and James Potope, AHSA at USP Allenwood (id. at 25-45), along with supporting attachments, consisting of relevant portions of Adams' administrative remedy and medical records.

Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." (Id. ¶ 3 (citing 28 C.F.R. § 542.10(a).) "If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures." (Id. ¶ 4 (citing 28 C.F.R. § 542.10(c).) Inmates are to informally present their complaints to the staff and the staff is to attempt to resolve the matter. (Id. ¶ 5 (citing 28 C.F.R. § 542.13(a).) If the informal resolution is unsuccessful, the inmate is then to execute the appropriate form to bring the matter to the attention of the warden. (Id. ¶ 6.) The warden is then to respond to the inmate's complaint within twenty (20) calendar days. (Id. ¶ 7 (citing 28 C.F.R. § 542.18).)

If an inmate is not satisfied with the warden's response, he may then appeal to the Regional Director within twenty (20) calendar days. (Id. ¶ 8 (citing 28 C.F.R. § 542.15(a).) If the response of the Regional Director is not satisfactory, the inmate may then appeal to the Central Office of the BOP within thirty (30) calendar days, which is the final level of administrative appeal in the BOP system. (Id. ¶ 9.) An exception is made for appeals of Discipline Hearing Officer ("DHO") decisions, which are first raised directly to the regional office level and then to the central office level. (Id. ¶ 10 (citing 28 C.F.R. § 542.14(d)(2).) No administrative remedy appeal is

considered to have been fully exhausted until rejected by the BOP Central Office. (Id. ¶ 11 (citing 28 C.F.R. § 542, et seq.))

In the ordinary course of business, computerized indexes of all administrative appeals filed by inmates are maintained so that rapid verification may be made as to whether an inmate has exhausted available administrative remedies on a particular issue. (Id. ¶ 12; Doc. 29-4, Sullivan Decl., at 5 ¶ 9.) If a remedy is rejected, it is returned to the inmate and the inmate is provided with a written notice explaining the reason for rejection. (Doc. 30 ¶ 13; Doc. 29-4 at 6 ¶ 10 (citing 28 C.F.R. § 542.17(b).) A copy of the remedy is not maintained by the BOP. (Doc. 30 ¶ 14; Doc. 29-4 at 6 ¶ 10.)

On January 29, 2012, a search of BOP records was conducted to determine whether or not Adams exhausted available administrative remedies regarding the issues he raises in his complaint. (Doc. 30 ¶ 17; Doc. 29-4 at 6 ¶ 11.) As reflected by the BOP's SENTRY computer print-out, this review revealed that Adams filed fifteen (15) administrative remedies from November 17, 2009 (the date he alleges he injured his right Achilles tendon) through September 14, 2011 (the date he filed his complaint). (Doc. 30 ¶¶ 15, 18; Doc. 29-4 at 6 ¶ 11) All fifteen (15) administrative remedies filed during the relevant time frame relate to issues raised in the complaint. (Doc. 30 ¶ 19; Doc. 29-4 at 7 ¶ 13; Doc. 29-4, Attach. 1, at 13-24.)

8

## A.  Administrative Remedy Regarding Care at USMCFP Springfield

On June 1, 2010, Adams filed administrative remedy number 592382-F1 in which he alleged that medical staff at the United States Medical Center for Prisoners ("USMCFP"), Springfield, Missouri, denied him medical treatment, treated him in an unprofessional manner, and were unconcerned about his pain. (Doc. 30 ¶ 20; Doc. 29-4 at 7 ¶ 14.) He also alleged that he did not sign a refusal of treatment form. (Doc. 30 ¶ 21.) The administrative remedy did not raise any allegations against any of the named Defendants in the instant action. (Id. ¶ 22.) The remedy was "closed - other" on June 15, 2010. (Id. ¶ 23.)

On October 4, 2010, Adams appealed the response at remedy number 592382-R1. (Id. ¶ 24.) On the same date, the appeal was rejected, and Adams was instructed to file the appeal in the region where he was currently housed (i.e. the Northeast Regional Office). (Id. ¶ 25.)

On October 18, 2010, Adams appealed the rejection to the Northeast Regional Office at remedy number 592382-R2. (Id. ¶ 26.) The appeal was rejected on October 19, 2010, and Adams was instructed to resubmit the appeal along with a copy of his institution-level administrative remedy form and/or a copy of the warden's response. (Id. ¶ 27.)

On November 9, 2010, Adams appealed the rejection with the Central Office

instead of with the Northeast Regional Office. (Id. ¶ 28.) The appeal, which was assigned remedy number 592382-A1, was rejected on December 3, 2010, and Adams was instructed to file at the appropriate level. (Id. ¶ 29.)

On February 3, 2011, Adams appealed the rejection with the Central Office instead of with the Northeast Regional Office. (Id. ¶ 30.) The appeal, which was assigned remedy number 592382-A2, was rejected on February 22, 2011, and Adams once again was instructed to file at the appropriate level. (Id. ¶ 31.)

Adams then filed his appeal on March 16, 2011 with the Northeast Regional Office at remedy number 592382-R3. (Id. ¶ 32.) The appeal was rejected on April 5, 2011, and Adams was instructed to contact his Unit Team at his current institution to demonstrate a valid reason for filing late since his original appeal was filed in June 2010. (Id. ¶ 33.) Sullivan declares that there is no record that Adams ever appealed this rejection or submitted a valid reason for filing late. (Id. ¶ 34; Doc. 39- 4, Sullivan Decl., at 8 ¶ 14 f.)

In his Statement of Material Facts, Adams states that, on or about July 25, 2011, he filed an "Administrative Remedy B-11 to the Central Office to exhaust his administrative remedy", and that he did not receive a response or a motion for an extension of time. (Doc. 40 ¶ 30.) In support of his statement, he refers to his Attachment #4, which is a copy of two certified mail receipts addressed to the BOP

10

Central Office with a postmark of July 27, 2011. (Id.)  Adams states that he "has now demonstrated that he has exhausted his administrative Remedy before he filed the appropriate civil complaint" and again cites to his Attachment #4 in support of his statement. (Id. ¶ 32.)

**B.    Administrative Remedy Requesting Orthopedic Surgeon Consult**

On September 7, 2010, Adams filed administrative remedy number 605839-F1 in which he requested to be evaluated by an orthopaedic surgeon for his Achilles concern. (Doc. 30 ¶ 35; Doc. 29-4 at 8 ¶ 15.)  On September 10, 2010, this remedy was partially granted because the institution already had submitted a referral to an orthopaedic surgeon and was awaiting approval of the referral from the Northeast Regional Office staff. (Doc. 30 ¶ 36.)  The approval was received on September 10, 2010, and an appointment was being scheduled. (Id. ¶ 37.)  There is no record that Adams filed an appeal from this partial grant. (Id. ¶ 38.)

**C.    Administrative Remedy Requesting Transfer to Medical Center**

On January 31, 2011, Adams filed administrative remedy number 624463-F1 in which he requested to be transferred to a medical center in order to receive physical therapy more frequently than offered at USP Allenwood. (Doc. 30 ¶ 39; Doc. 29-4 at 9 ¶ 16.)  This remedy was denied on February 18, 2011, although it was noted that a request for a medical transfer was pending and Adams had 79

clinical entries of care from January 21, 2010, through February 1, 2011.  (Doc. 30 ¶ 40.)

Adams appealed the denial on March 16, 2011 at remedy number 624463-R1. (Id. ¶ 41.)  The appeal was rejected on April 5, 2011 as untimely filed.  (Id. ¶ 42.)

On August 8, 2011, Adams appealed the rejection of his remedy as untimely at remedy number 624463-A1.  (Id. ¶ 43.)  The appeal was once again rejected as untimely filed and Adams was instructed to provide documentation from staff on letterhead that the late filing was not his fault and then to re-submit his appeal to the Northeast Regional Office.  (Id.)

There is no record that Adams ever appealed this rejection or submitted a valid reason for filing late.  (Id.)

### D.    Administrative Remedy Requesting "Hands-on" Therapy

On May 23, 2011, Adams filed administrative remedy number 640327-F1 in which he alleged that he was not receiving "hands-on" therapy.  (Doc. 30 ¶ 46; Doc. 29-4 at 10 ¶ 17.)  The remedy was denied on May 31, 2011 because Adams had been receiving hands-on therapy.  (Doc. 30 ¶ 47.)

Adams appealed the denial on June 10, 2011 at remedy number 640327-R1. (Id. ¶ 48.)  In his appeal, he also requested monetary damages.  (Id. ¶ 49.)  The appeal was denied on July 7, 2011, and Adams was referred to the Federal Tort Claims Act

for his request for monetary damages. (Id. ¶ 50.)

Adams appealed the denial on August 1, 2011 at remedy number 640327-A1 to the BOP Central Office. (Id. ¶ 51.) The response to that appeal was due on or before September 30, 2011. (Id. ¶ 52.) Prior to receiving a response to his appeal, Adams filed this action on September 14, 2011. (Id. ¶ 53.)

### E.    Administrative Remedy Requesting Appropriate Footwear

On August 22, 2011, Adams filed administrative remedy number 652919-F1 in which he alleged that he has not been provided with appropriate footwear. (Id. ¶ 54; Doc. 29-4 at 10 ¶ 18.) The remedy was "closed - other" on August 29, 2011, by the acting warden because Adams returned previous shoes that had been issued and stated he wanted a specific kind which was not carried by the vendor. (Doc. 30 ¶ 55.) Further, the orthopedic surgeon did not indicate that Adams' current footwear was inappropriate. (Id. ¶ 56.)

Adams appealed the response on September 9, 2011 at remedy number 652919-R1 to the Northeast Regional Office. (Id. ¶ 57.) The response to that appeal was due on or before October 9, 2011. (Id. ¶ 58.) Prior to receiving a response to his appeal, Adams filed this action on September 14, 2011. (Id. ¶ 59.)

13

## III.   Discussion

### A.   Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims through an administrative grievance process before filing suit in federal court. Specifically, section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "'[I]t is beyond the power of this court- or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.'" Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71. The PLRA also mandates that inmates "properly" exhaust administrative

remedies before filing suit in federal court.[5]   Woodford v. Ngo, 548 U.S. 81, 92

(2006).  See also Oriakhi v. United States, 165 Fed. Appx. 991, 993 (quoting Johnson

v. Jones, 340 F.3d 624, 627 (8th Cir. 2003) (3d Cir. 2006) ("[T]he district court must

look to the time of filing, not the time the district court is rendering its decision, to

determine if exhaustion has occurred.")).

"Proper exhaustion demands compliance with an agency's deadlines and other

critical procedural rules because no adjudicative system can function effectively

without imposing some orderly structure on the course of its proceedings."  Id. at 90-

91.  Such requirements "eliminate unwarranted federal-court interference with the

administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and

opportunity to address complaints internally before allowing the initiation of a federal

case.'"  Id. at 93 (quoting Porter, 534 U.S. at 525)).  Failure to comply with

procedural requirements of the applicable prison's grievance system will result in a

procedural default of the claim.  Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004)

("[P]rison grievance procedures supply the yardstick for measuring procedural

---

[5]Because a plaintiff's failure to exhaust is an affirmative defense, a plaintiff is not required to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  Rather, failure to exhaust must be pleaded and proven by the defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

default.")  A procedural default, "either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim."  <u>Gallego v. United States</u>, Civil No. 1:02-CV-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

### B.    Analysis

Defendants have demonstrated that Adams failed to exhaust his administrative remedies before initiating this lawsuit.  Specifically, on the record developed through the instant motion, as set forth above, Defendants have established that Adams did not fully exhaust any of the administrative remedies relating to the issues raised in his Complaint prior to filing this action.  In opposing Defendants' argument that he failed to exhaust, Adams offers two contradictory responses.  First, in his Statement of Facts, he refers to a copy of two certified mail receipts addressed to the BOP Central Office, which he has submitted as an exhibit, as proof that he exhausted his administrative remedies before initiating this action.  (See Doc. 40 ¶¶ 30-32; Doc. 41-1 at 4, Attach 4.)  We observe that these receipts are not return receipts, and therefore are not proof of receipt of anything by the BOP Central Office.  More importantly, it is not possible to ascertain the content of any mailings by Adams to the BOP merely by looking at the receipts.  Consequently, the copy of the receipts fails to controvert Defendants' evidence, consisting of official BOP records, which show that Adams

did not properly exhaust any of his fifteen (15) administrative remedies prior to initiating this action.

In contradiction to his statement that he properly exhausted his administrative remedies, in his opposition brief, Adams concedes that he failed to properly exhaust his administrative remedies, but suggests that he nevertheless is entitled to have his case adjudicated, or that the Court should stay this case while he fully exhausts his claims. (See Doc. 39 at 5-6.) This Court lacks the authority to excuse the exhaustion requirement, see Nyhuis, 204 F.3d at 73, and where administrative remedies must be exhausted **before** filing suit in federal court, see Woodford, 548 U.S. at 92; Oriakhi, 165 Fed. Appx. at 993, there is no basis in the law for staying a case to allow a litigant to exhaust his remedies. Thus, where Adams has failed to submit any evidence to controvert the records submitted by Defendants, as summarized above, showing that he failed to properly exhaust his fifteen (15) administrative remedies relating to his claims in this lawsuit, and he actually concedes his failure to exhaust in his opposition brief, Defendants are entitled to judgment as a matter of law.

## IV.   Merits

Having reviewed the record before us on Defendants' motion for summary judgment, we find that, even if Adams had properly exhausted his administrative remedies, he has failed to submit any evidence to show that there is a genuine issue

17

for trial as to his deliberate indifference claim.

In order to establish an Eighth Amendment claim against a defendant for inadequate medical care, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions . . . that indicate deliberate indifference to that need." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 103, 105 (1976)).

The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). "The official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see also Singletary v. Pennsylvania Department of Corrections, 266 F.3d 186, 192 n.2 (3d Cir.

18

2001).

In the instant case, Adams has failed to present any evidence to controvert the undisputed factual record, which establishes that, in response to each of his various requests for medical care, Adams consistently and promptly was provided with responses and referrals to the appropriate medical care providers for treatment in response to his requests. (See Doc. 30, Defs.' Statement of Material Facts, ¶¶ 65-181.) A complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . ." Estelle, 429 U.S. at 106. Moreover, an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 70 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990). Thus, to the extent Adams seeks to impose liability on Defendants based upon his contention that they were negligent in the medical care provided, or because he disagrees with the course of medical treatment provided, these claims do not give rise to a cause of action under Bivens.[6]

---

[6]In his opposition brief, Adams observes that the Federal Tort Claims Act ("FTCA") provides a remedy for negligence claims and suggests that he should be permitted to amend his pleadings to assert any potentially meritorious claims. (See Doc. 39 at 12-13.) Notwithstanding whether it is even appropriate to convert an action to an FTCA action based upon a statement by a pro se litigant in a brief in

(continued...)

Consequently, Adams has failed to show that there is a genuine issue for trial as to his deliberate indifference claim.

## V.   Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted.  An appropriate order follows.

---

[6](...continued)
opposition to a dispositive motion, it is apparent from the record that Adams was referred to the administrative tort claim procedure prior to instituting this action, yet he chose not to file an FTCA claim.  (See Doc. 30 ¶ 50; Doc. 29-4, Sullivan Decl., at 10 ¶ 17.)  An action filed in federal court pursuant to the FTCA must first be submitted in writing to the appropriate federal agency as an administrative tort claim. 28 U.S.C. § 2675.  As such, where it is apparent that Adams did not take the steps necessary to pursue an FTCA claim in federal court, there is no basis for this Court to convert this action to one filed under the FTCA or to allow Adams to amend his pleadings to attempt to state such a claim.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL WAYNE ADAMS,                    :
                                        :
            Plaintiff,                   :  CIVIL NO. 3:11-CV-1711
                                        :
    v.                                  :  (Judge Kosik)
                                        :
THOMAS R. KANE, et al.,                 :
                                        :
            Defendants                  :

## ORDER

NOW, THIS /7 ᵗʰ DAY OF AUGUST, 2012, IT IS HEREBY ORDERED

THAT:

1.    Defendants' motion for summary judgment (Doc. 27) is **GRANTED**.

2.    The Clerk of Court is directed to **enter** judgment in favor of Defendants

      and against Plaintiff.

3.    The Clerk of Court is directed to **close** this case.

4.    Any appeal from this order is **deemed** frivolous and not in good faith.

      See 28 U.S.C. § 1915(a)(3).

                                        _____
                                        EDWIN M. KOSIK
                                        United States District Judge